UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARISSE S. MOORE,

      Plaintiff,

   -against-

STRIPE, INC.,

      Defendant.

24-CV-2799 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, United States District Judge:

  Plaintiff Charisse S. Moore, proceeding *pro se*, brings this action against Defendant Stripe, Inc. ("Stripe"), invoking the Court's federal question jurisdiction. The Complaint asserts claims for employment discrimination, along with a wide range of other putative causes of action. Stripe has moved to dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 14.) For the reasons that follow, the motion is granted.

**I. Background**

  The following facts are drawn from Plaintiff's Complaint (ECF No. 1-1 ("Compl.")), and documents "integral" to it, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004), and are presumed true for purposes of this opinion. All reasonable inferences are drawn in Plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

  As with Moore's other cases filed in this Court, the core of her allegations concerns what she labels a "multi-year Stalking scheme" involving "multiple World Intelligence Agencies, to include, but not limited to the United States Department of Justice (DOJ), Secret Intelligence Service (SIS), the Federal Bureau of Investigation (FBI) and other agencies." (Compl. at 1.) These allegations substantially overlap with those in two other cases that this Court recently dismissed as frivolous. *See Moore v. Fox News*, No. 24-CV-5470 (S.D.N.Y. July 15, 2024);

1

*Moore v. KPMG*, No. 24-CV-5471 (S.D.N.Y. July 15, 2024). The Court incorporates its discussion of the factual allegations in those cases. *See Fox News*, No. 24-CV-05470, ECF No. 8 § I; *KPMG*, No. 24-CV-5470, ECF No. 21 § I. Substantial portions of the factual recitation in the Complaint focus on persons and entities other than Stripe. (*See, e.g.*, Compl. at 7 (detailing Moore's employment at Deloitte Consulting and RedHat).) This opinion focuses only on those allegations pertaining to the named defendant. In the interest of judicial economy, this section does not endeavor to faithfully reproduce every allegation made by Moore, but rather offers a representative sample.

    Whereas Moore's cases against Fox News and KPMG focused on the collapse of her personal friendships with two women—Ryanne Saucier and Brenda Hills[1]—her case against Stripe appears to concern Stripe's response to the indirect consequences of the events giving rise to the other two cases. Moore styles her pleading as an "Employment Discrimination Complaint" based on a "Constructive Discharge . . . due to Alessandro Giagodi's participation in the Unauthorized Recording, Publication and Distribution of Interviews at Stripe, Inc., Therapy Sessions[,] and/or TV or Radio shows." (*Id*. at 1.) She also appears to allege that the "[c]onstructive [d]ischarge" is related to a "Military Tactical Hold in Charlotte, North Carolina" and a "Global Payroll Offsite in Dublin, Ireland." (*Id.* at 6.)

    In March or April 2022, Moore allegedly interviewed for a job at Stripe with Stripe's Global Payroll Lead, Alessandro Giagodi. (*Id.* at 9.) She alleges that her "first day of onboarding . . . was not smooth, as [she] received conflicting emails" regarding her start date and had "problems logging into the Stripe . . . systems." (*Id.* at 9-10.) She provides some other

---

[1] In the caption to Moore's case against KPMG, Hills' name is spelled with an "S." However, in the Complaint in that case, Moore frequently refers to her as "Hill" without an "S." The Court here uses "Hills" to match the caption, while recognizing the discrepancy in spellings.

details about her employment at Stripe, and notes that "[s]ome Stripe employees were standoffish to me upon joining Stripe . . . while others were not." (*Id.* at 10.) She states that Giagodi "did not take the time to introduce [her] to key stakeholders across the [company]." (*Id.*) In July 2022, while working on a payroll-related project with Giagodi, Giagodi allegedly stated to her "that he . . . does not know the US labor laws and was not interested in them." (*Id.*)

Moore alleges that, while employed at Stripe, she was the victim of a "multi-year stalking scheme," which caused her to relocate her primary residence multiple times. (*Id.* at 6.) At the same time, Moore alleges, based on publicly available news articles, that Stripe conducted large-scale layoffs. (*Id.* at 12.) On April 4, 2023, Moore alleges that she met with Dan Johnson, a member of Stripe's "Corporate Security" team "to discuss at a super high-level stalking in Charlotte, North Carolina and hidden cameras within [her] apartment at Lincoln." (*Id.* at 16.) Due to the alleged stalking, Moore "implement[ed] a Relocation Strategy" and moved from North Carolina to New York. (*Id.* at 17.) In connection with her move, she requested and was granted a leave of absence from her job at Stripe. (*Id.*; *see also* ECF No. 1-4 at 1-2.) According to Moore, "Stripe pays by geographical location," with New York employees receiving higher pay than those in other markets. (Compl. at 17-18.) When she moved to New York, Moore "was denied a salary adjustment and/or cost of living adjustment." (*Id.* at 18.) In denying her request, Giagodi wrote on May 25, 2023 that "there is no business need justifying the cost implications for a move to the NYC area." (*Id.*; *see also* ECF No. 1-7 at 1.) Just over a week later, however, Giagodi and Stripe reversed their position, approving Moore's transfer request to the New York City area. (ECF No. 1-8 at 1-2.)

After her transfer, Moore alleges, Giagodi was not available for "assistance with IT requests," and that she was required to stay in a different hotel from other Stripe employees

3

during an offsite meeting in Dublin, Ireland. (Compl. at 18-19.) Moore does not allege any other problematic conduct during her time in Dublin.

Upon her return to New York, in a session with her personal therapist, Moore allegedly told her therapist that "people were laughing at [her] as [she] walked around [her] neighborhood in Midtown East," and that Giagodi had taken a personality test and received results indicating that he "has low empathy." (*Id.* at 20.)

Following this therapy session, Moore received a negative performance evaluation from Giagodi. (*Id.* at 21.) Apparently based on this, Moore alleges that she "strongly believe[s] that there is video footage of the Therapy Session," that Giagodi viewed that footage, and that he "participat[ed] in the unauthorized recording, publication and/or distribution of [her] therapy sessions and/or performance evaluation." (*Id.*) She then alleges that a "Hispanic man" "swarm[ed]" her "near [her] apartment." (*Id.*) Moore states that "[d]ue to the swarming event[] that was a result of the Unauthorized Publication and Distribution of Therapy sessions . . . [she] chose to leave Stripe, Inc. rather than work in a hostile environment under . . . Giagodi." (*Id.*)

After she alerted Stripe to her decision to leave on July 17, she "[r]eceived notification from Stripe" that July 17 would be her "last working day at Stripe." (*Id.*) She alleges that this "differ[s] vastly from the traditional two weeks that is customary in the termination process." (*Id.*) Moore also includes in the Complaint several pages of what appear to be alleged deficiencies in Stripe's payroll department, including, for example, the "lack of [t]imeclocks" in certain locations. (*Id.* at 22-24.) As a result of her alleged "[c]onstructive [d]ischarge," Moore is "seeking full restitution of [her] total compensation package," including over $9 million in forward-looking long-term disability benefits. (*Id.* at 27.)

4

## II.     Legal Standard

Plaintiff is proceeding *pro se*. "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*.

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) further requires that "[e]ach allegation must be simple, concise, and direct." "A complaint fails to comply with Rule 8(a)(2) if it is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) (quotation marks omitted). "Complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with Rule 8 and must be dismissed." *Celli v. N.Y.C. Dep't of Educ.*, No. 15-CV-3679, 2016 WL 10567948, at *2 (E.D.N.Y. Dec. 24, 2016), *aff'd sub nom. Celli v. Cole*, 699 F. App'x 88 (2d Cir. 2017) (summary order) (cleaned up). The special solicitude due to *pro se* plaintiffs does not exempt them from the already permissive minimum standards set forth in Rule 8. *See, e.g., Paul v. Bailey*, No. 09-CV-5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010).

Rule 12(b)(6) authorizes a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complainant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Finally, the Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("An action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") (quotation marks and citation omitted).

**III.    Discussion**

In her *pro se* employment discrimination claim form, Moore states that she asserts claims pursuant to Title VII, U.S.C. §§ 2000 *et seq.*, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, along with state law discrimination, stalking, and equal pay claims. (ECF No. 1 at 3-4.) She characterizes these claims as alleging discrimination based on her race, sex, and age, failure to accommodate her disability (generalized anxiety disorder), retaliation against her based on her leave requests,

harassment, and creation of a hostile work environment tantamount to a constructive discharge. (*Id.* at 3-5.)

Even construing Moore's pleadings with the "special solicitude" due to *pro se* pleadings, *Triestman*, 470 F.3d at 475, the Court concludes that the allegations do not plausibly allege an actionable violation of her rights. The Court must not dismiss a complaint simply because the facts alleged appear to be "unlikely," *Denton*, 504 U.S. at 33, but a finding of factual frivolousness is warranted when the facts alleged are "clearly baseless," "fanciful," "fantastic," "delusional" or "wholly incredible," "whether or not there are judicially noticeable facts available to contradict them." *Id*. at 32-33; *see also Livingston*, 141 F.3d at 437. "Plaintiff's beliefs—however strongly [s]he may hold them—are not facts." *Morren v. N.Y. Univ.*, No. 20-CV-10802, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022).

Here, while Moore was employed by Stripe, her complaint does not allege any cognizable instance of discrimination based on membership in a protected class, harassment, retaliation, or other discrimination. All of her federal claims require that at least some adverse action have been taken against her (or that there was some refusal of a request for accommodation). For example, Title VII and ADEA claims require at least that some form of adverse employment action has occurred. *See Ahmad v. Nassau Health Care Corp.*, 234 F. Supp. 2d 185, 192 (E.D.N.Y. 2002); *Brewer v. Sears, Roebuck & Co.*, 315 F. Supp. 2d 295, 299 (W.D.N.Y. 2004). FMLA claims require a "denial of FMLA benefits" or retaliation for the "exercise of rights protected under the FMLA." *McGuiness v. East West Indus.*, 857 F. Supp. 2d 259, 264 (E.D.N.Y. 2012). And ADA and Rehabilitation Act claims based on failure to accommodate require at least that an employer failed to provide a "reasonable accommodation"

when on notice of a plaintiff's disability. *See Quadir v. N.Y. State Dep't of Lab.*, No. 13-CV-3327, 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016), *aff'd*, 691 F. App'x 674 (2d Cir. 2017) (summary order).

Here, Moore has not plausibly alleged that Stripe took any adverse employment actions against her. She admits that she left the company voluntarily, allegedly in response to work conditions that amounted to a constructive termination. (Compl. at 21.) The only conceivable bases for this supposed constructive termination are: (1) that she received a negative "performance evaluation" (*id.*); (2) that she had some difficulty contacting Giagodi, Stripe's Global Payroll Lead, with information technology questions when she transferred to New York (*id.* at 18); (3) a wholly conclusory allegation that Giagodi secretly recorded and disseminated her private therapy sessions (*id.* at 21); and (4) that she stayed in a different hotel from other employees on a company trip to Ireland (*id.* at 18-19). Conversely, when notified of Moore's stalking complaints, Stripe granted her request for a leave of absence and then granted her additional request for a transfer to the New York City area. (*Id.* at 18; ECF No. 1-8 at 1-2.) Moore nowhere alleges that any request for accommodation was denied. Moore also provides no plausible support for any of the other claims in the Complaint, such as the allegations of a global stalking conspiracy spearheaded by governmental intelligence agencies.

The Complaint therefore fails to satisfy the minimal standards of coherence and rationality required by Rule 8, as well as the plausibility standard embodied in Rule 12(b)(6).[2] *See, e.g.*, *Lavi v. Bank Negara Indonesia*, No. 22-CV-6000, 2023 WL 5016917, at *6 (S.D.N.Y.

---

[2] Stripe also argues that Moore released her claims when she accepted her severance package (ECF No. 16 at 11) and that Moore failed to exhaust her administrative remedies as required for her federal claims (*id.* at 14). While these arguments also appear to be meritorious, the Court need not address them here given the substantive deficiencies in Moore's Complaint.

Aug. 7, 2023) (applying Rule 8 even when the defendant's motion to dismiss raised only Rule 12). The combination of the lack of any factual support for Moore's allegations and the outlandish nature also renders the Complaint frivolous. *Cf. Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order) (upholding a district court's determination that a complaint was frivolous based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence Center, which put a 'digital marker' on him in order to collect his personal data and harass him").

With respect to Moore's state-law claims, the Court has supplemental, or pendent, jurisdiction given their purported "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367. "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Because the federal claims here have all been dismissed well before trial, the Court exercises its discretion to dismiss the state claims without prejudice. *See Uniformed Firefighters Ass'n, Loc. 94, IAFF, AFL-CIO v. City of New York*, 676 F.2d 20, 23 (2d Cir. 1982).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Here, Moore's allegations are "vague" and "incomprehensible," and the Court cannot discern any claims that are not "frivolous on their face." *Cf. Salahuddin*, 861 F.2d at 43. Because the defects in Moore's complaint cannot be cured, the Court declines to grant her leave to amend.

**IV.     Warning**

Moore has filed multiple suits with claims similar to those brought in this action, some of which also name the same defendants. *See, e.g., Fox News*, No. 1:24-CV-5470 (claims of interstate stalking); *KPMG*, No. 24-CV-5471 (same); *Moore v. Scenic Prods.*, No. 24-CV-5413 (S.D.N.Y. July 11, 2024) (same); *Moore v. Georgia*, No. 24-CV-5545 (S.D.N.Y. July 18, 2024) (same); *Moore v. Vanderbilt Univ.*, No. 24-CV-5533 (S.D.N.Y. July 17, 2024) (same).

Plaintiff is warned that, should she file future actions in this court that are duplicative or frivolous, the Court may enter an order barring her from filing new actions in forma pauperis unless she receives permission from the Court to do so. *See* 28 U.S.C. § 1651.

**V.     Conclusion**

Defendant's motion to dismiss (ECF No. 14) is GRANTED. Plaintiff's federal claims are hereby dismissed with prejudice pursuant to Rules 8(a) and 12(b)(6) and are deemed frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff's state law claims are dismissed without prejudice to refiling in state court.

The Court warns Plaintiff that, should she file future actions in this court that are frivolous or duplicative, the Court may enter an order barring her from filing new actions *in forma pauperis*, unless she receives permission from the Court. *See* 28 U.S.C. § 1651.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

      The Clerk of Court is directed to enter judgment of dismissal, to terminate all pending motions, and to close this case.

      SO ORDERED.

Dated: October 30, 2024
       New York, New York

                                                            J. PAUL OETKEN
                                          United States District Judge